Ernest R. LANG, Plaintiff and Appellant, Rosemary E. Lang, (deceased), Plaintiff,

BANK OF NORTH DAKOTA, Defendant and Appellee.

Civ. No. 10947.

Supreme Court of North Dakota.

Nov. 21, 1985.

the denial of benefits. *Claim of Bromley,* 330 N.W.2d 498 (N.D.1983).

Ernest R. Lang, pro se.

Gary Bauer, Asst. Atty. Gen., (argued) and Thomas B. Tudor, Bismarck, for defendant and appellee.

MESCHKE, Justice.

We consider whether an appeal can be taken more than 10 months after entry of a final order, which denied a motion to enjoin a foreclosure by advertisement, where no notice of entry of the order was given. We hold that actual knowledge of entry of the

order, where clearly evidenced in the record, commences the running of the time for appeal. We also hold that this belated effort to invoke judicial forbearance under the "confiscatory price" provisions of Section 28–29–04, N.D.C.C., is not sufficiently worthy to outweigh the policy of finality of judicial decisions so as to permit the extension of the time for filing the appeal in this case. Accordingly, we grant the motion to dismiss this appeal.

On April 4, 1977, Ernest and Rosemary Lang[1] borrowed $80,000 from the Bank of North Dakota and executed a note and mortgage on their farm in return for the loan. Lang subsequently defaulted on the note and, on February 10, 1984, the Bank served him with a notice of intention to foreclose the mortgage. For six consecutive weeks, beginning on March 26, 1984, the Bank published a notice of sheriff's sale in *The Bismarck Tribune* advertising that the farm would be sold on May 11, 1984. The Bank delivered a copy of the notice of sale to Lang on April 12, 1984.

On May 9, 1984, Lang filed a motion with the district court requesting it to enjoin the foreclosure by advertisement pursuant to Section 35–22–04, N.D.C.C.[2] Lang's mo-

---

1. Rosemary is now deceased, and this appeal is pursued solely by Ernest.

2. Section 35–22–04, N.D.C.C., provides:

 "*35–22–04. Foreclosure by advertisement enjoined—Procedure.* When the mortgagee or his assignee has served notice of intention to foreclose a mortgage, and within the period provided by such notice it shall be made to appear by the affidavit of the mortgagor, or any person claiming under him, or his agent or attorney, to the satisfaction of a judge of the district court of the county where the mortgaged property is situated, that the mortgagor has a legal counterclaim or any other valid defense against the collection of the whole or any part of the amount claimed to be due on such mortgage, which proof must be made by affidavit stating the facts, but not on information and belief, such judge, by an order to that effect, may enjoin the mortgagee or his assignee from foreclosing the mortgage by advertisement and may direct that all further proceedings for the foreclosure thereof be had in the district court having jurisdiction of the subject matter. After the expiration of the period provided by the notice of intention, an order enjoining the foreclosure by adver-

 tisement shall be made only on motion or order to show cause. Notice of such motion, together with the affidavit used in support thereof, shall be served upon the attorney or agent of the mortgagee or assignee in the same manner as service of other notices of motion, not less than eight days before the hearing thereon. The affidavit in support of the motion shall state the facts upon which the application is made, shall not be on information and belief, and shall disclose a legal counterclaim or other valid defense to the collection of the whole or some part of the amount claimed to be due on the mortgage. Upon the hearing of the motion, the judge may enjoin the foreclosure of the mortgage by advertisement in the same manner as if the application had been made ex parte within the period of the notice of intention to foreclose. Service of the restraining order may be made upon the attorney or agent of the mortgagee or assignee, if the order was obtained ex parte, or if obtained on motion or order to show cause, it may be served upon the attorney or agent or upon the sheriff of the county where the foreclosure sale is to be had. If the notice of intention does not disclose the address of a resident agent or attor-

tion was accompanied by an affidavit asserting that he had "one or more legal counterclaims or valid defenses to the collection of the whole or of a part of the amount claimed due," including that his farm was "worth in excess of the debt to the Bank of North Dakota and a foreclosure sale would result in the confiscation of his property and the loss of his livelihood" and that he "has been faced with costs of production that exceed the prices received for his agricultural products." Lang requested that a foreclosure by action be filed by the Bank so that he could present his defenses. On May 10, 1984, Lang filed a supplemental affidavit with the district court asserting that he "never knew that there was a recourse to foreclosure by advertisement until he conferred with Mr. Folmer at the Kist Livestock Sales on the afternoon of May 3, 1984," and that after reading the file of *Folmer v. State*, 346 N.W.2d 731 (N.D.1984), he believed his case was a duplicate of that case.

On May 11, 1984, the district court denied Lang's motion because it was not filed within 30 days of the Bank's service of notice of intention to foreclose by advertisement. The sale was held as scheduled, and the Bank purchased the property.

On June 11, 1984, Lang filed an application for a writ of mandamus requesting this Court to invoke its original jurisdiction and compel the district court to enjoin the sale. We denied Lang's application because he had failed to meet the criteria for this Court to exercise its supervisory jurisdiction. *Lang v. Glaser*, 359 N.W.2d 884 (N.D.1985). We noted that Lang had failed to present circumstances tantamount to a denial of justice and that he had a right to appeal the district court's decision but chose not to pursue that remedy. *Lang v. Glaser*, *supra*, 359 N.W.2d at 886.

On March 27, 1985, Lang filed a notice of appeal from the district court's May 11,

1984 order denying his motion to enjoin the foreclosure by advertisement.

The Bank has moved to dismiss Lang's appeal because it was not filed within the time limits of Rule 4(a), N.D.R.App.P. Rule 4(a) provides, in part, as follows:

"In a civil case the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court *within 60 days of the date of the service of notice of entry of the judgment or order appealed from*. . . .

\* \* \* \* \* \*

"Upon a showing of excusable neglect, the trial court may extend the time for filing the notice of appeal by any party for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision. Such an extension may be granted before or after the time otherwise prescribed by this subdivision has expired; but if a request for an extension is made after such time has expired, it shall be made by motion with such notice as the trial court shall deem appropriate." [Emphasis added.]

The emphasized language reflects that, under our rules,[3] the time for appeal does not commence to run until service of notice of entry of the judgment or order appealed from. The responsibility to serve the notice and commence the period for appeal is upon counsel for a prevailing party and the time for appeal technically does not begin to run until the notice is served. See *Matter of Estate of Erickson*, 368 N.W.2d 525, 528 (N.D.1985); *In the Matter of Alf J. Bo*, 365 N.W.2d 847, 850 (N.D.1985).

The record before us does not show that Lang was served with a notice of entry of the order denying the motion to enjoin foreclosure by advertisement. However, the record clearly reflects that Lang had actual knowledge of entry of the order because he

---

ney, the order may be served upon such sheriff."

3. The explanatory note to Rule 4, N.D.R.App.P., points out that our rule differs from Rule 4, F.R.App.P., which provides that the time for

appeal runs from the date of entry of the order or judgment. Pursuant to Rule 77(d), F.R. Civ.P., the clerk has the responsibility to serve the notice of entry of an order or judgment.

filed an application to this Court for a writ of mandamus on June 11, 1984 seeking to reverse the order.

In *Klaudt v. Klaudt,* 156 N.W.2d 72 (N.D.1968), we held that the purpose of requiring service of written notice of entry of a judgment or order was fulfilled when the appealing party had actual knowledge of the entry of judgment which, in that case, was clearly established by a motion to vacate that judgment. We held that although the record did not disclose that the appealing party had been served with notice of entry of judgment, the time for appeal commenced when the appealing party had actual knowledge of entry of the judgment. *Klaudt v. Klaudt, supra,* 156 N.W.2d at 76. See also, *Cline v. Roemer,* 97 Idaho 666, 551 P.2d 621 (1976); *Matter of Estate of Herrmann,* 677 P.2d 594 (Nev. 1984). We reaffirm our decision in *Klaudt v. Klaudt, supra,* that, even though the record does not reflect service of a notice of entry of the judgment or order, actual knowledge of entry of a judgment or order commences the running of the time for appeal where the actual knowledge is clearly evidenced in the record.

 We conclude that the time for appeal began to run on June 11, 1984, when Lang had actual knowledge of entry of the order as evidenced by his filing an application for writ of mandamus in this Court. Therefore, Lang's appeal is untimely under Rule 4(a), N.D.R.App.P.

Nevertheless, Lang asserts that this Court should not dismiss his appeal under Section 28–29–04, N.D.C.C., which provides:

> *"28–29–04. Power of courts when prices are confiscatory.*—Until the price of farm products produced in this state shall rise to a point to equal at least the cost of production, in comparison with the price of other commodities in general, entering into the business of agriculture, *the supreme court of this state and all district and county courts in this state shall have power, when it is deemed for the best interests of litigants, to extend the time for serving and filing all papers requisite and necessary for the final determination of any cause.* Any such court, in like manner, may stay the entry of judgment or the issuance of execution thereon, or may defer the signing of any order for judgment, or may defer terms of court, whenever in the judgment of the court the strictly legal procedure in any cause will confiscate or tend to confiscate the property of any litigant by forcing the sale of agricultural products upon a ruinous market." [Emphasis added.]

That section and Sections 28–29–05 and 28–29–06, N.D.C.C.,[4] were adopted by our legislature in 1933 as part of a comprehensive response to a well documented agricultural and economic crisis. Vogel, *The Law of Hard Times: Debtor and Farmer Relief Actions of the 1933 North Dakota Legislative Session,* 60 N.D.L.Rev. 488 (1984); see also Robinson, *History of North Dakota,* pp. 396–419 (1966). During the 1933 Legislative Session, various bills were proposed and adopted to deal with issues of foreclosure, farm debt, farm-debtor relief, and low farm prices. The actions taken during that legislative session included bills authorizing a grain embargo, extending the time period for the right of redemption, prohibiting deficiency judgments, and authorizing courts to delay foreclosures while farm prices were below

---

**4.** Section 28–29–05, N.D.C.C., provides:

> *"Courts may delay orders in foreclosures.* —Whenever any foreclosure proceeding is pending in any court in this state and the amount of the debt is less than the value of the property involved, and when any order for judgment will have the force and effect of depriving a defendant of his home and confiscating his property, the court may construe further proceedings to be unconscionable, and may delay the signing of such order to such time as it shall deem it advisable and just to enter the same."

Section 28–29–06, N.D.C.C., provides:

> *"Public policy.*—Any court mentioned in section 28–29–04 may take judicial notice of the situation of producers and laborers when prices of farm products are confiscatory, and upon the ground of public policy may do all things necessary to be done lawfully to carry out the provisions of sections 28–29–04 and 28–29–05."

the cost of production. Unlike other depression-era laws enacted during the 1933 Legislative Session, Sections 28–29–04 through 28–29–06, N.D.C.C., have never been repealed.

In *Folmer v. State,* 346 N.W.2d 731 (N.D.1984), we held that the "confiscatory price defense" was a sufficient legal counterclaim or other valid defense to enjoin foreclosure by advertisement, thereby requiring foreclosure by an action rather than foreclosure by advertisement. However, we pointed out that the "confiscatory price defense" is not an absolute defense against foreclosure, but merely gives the court discretionary power to delay foreclosure proceedings during periods of economic hardship. In *Heidt v. State,* 372 N.W.2d 857 (N.D.1985), we concluded that a mortgagor alleging the "confiscatory price defense" is entitled to an injunction as a matter of law, thereby forcing the mortgagee bank to proceed by action rather than foreclosure by advertisement. We held that the district court abused its discretion in denying the Heidts' motion to enjoin foreclosure by advertisement. These cases reflect the viability of the "confiscatory price defense" as a defense available to a mortgagor.

▮ Does Section 28–29–04, N.D.C.C., which permits the extension of time for serving and filing "all papers requisite and necessary for the final determination of any cause," allow this Court to extend the time to file the notice of appeal in this case?

While this Court has not yet been called upon to fully analyze the "confiscatory price" provisions of Section 28–29–04, N.D. C.C., we observe that it does express an important legislative policy of judicial forbearance as to procedures during an agricultural depression. The legislature granted considerable judicial discretion to extend the time for serving and filing papers without altering any substantive obligation. This effort to invoke Section 28–29–04, N.D.C.C., requires us to examine the relationship of this section to our rules of appellate procedure.

Pursuant to our constitution, this Court has appellate jurisdiction and original jurisdiction with authority to issue original and remedial writs. Art. VI, § 2, N.D. Const. In this case, Lang seeks to invoke this Court's appellate jurisdiction. We have held that the time for taking an appeal is mandatory and jurisdictional, and, if an appeal is not taken within that time, this Court does not have authority to hear the appeal. E.g., *Dehn v. Otter Tail Power Co.,* 248 N.W.2d 851 (N.D.1976); *Cottle v. Kranz,* 231 N.W.2d 777 (N.D.1975).

▮ In order to invoke this Court's appellate jurisdiction, a party must file a timely notice of appeal from a judgment or order which is appealable under our statutes. If a timely notice of appeal is not filed, a lower court's decision is a final determination which may be modified only in rare circumstances and for compelling policy reasons. *See City of Minot v. Freelander,* 368 N.W.2d 514 (N.D.1985); Rule 60, N.D.R.Civ.P. The limited circumstances delineated in Rule 60, N.D.R.Civ.P., suggest that if a court has unlimited power to change a final determination, the legal process would be unending and the goal of a final resolution of disputes would be proportionately defeated.

In resolving legal controversies the public interest demands that, at some point, there be an end to litigation so that the parties may go about their normal business. *See First Trust Co. of North Dakota v. Conway,* 375 N.W.2d 160 (N.D.1985); *City of Wahpeton v. Drake-Henne, Inc.,* 228 N.W.2d 324 (N.D.1975). Our rules of procedure, statutes, and other established legal doctrines are all geared toward the final resolution of legal controversies. If the time for appeal may be extended indefinitely, the rights of intervening innocent parties also may be jeopardized. At some point, the public and third parties must be able to rely on the finality of a decision. This public policy of finality of decisions is strongly expressed in Rule 26(b), N.D.R. App.P., which provides that this Court "may not enlarge the time for filing a notice of appeal."

On the other hand, the legislative policy of judicial forbearance during agricultural depressions embodied in Section 28–29–04, N.D.C.C., is strongly rooted in the history and experience of our State. It has been carefully preserved by successive legislative sessions for over half a century. And, we are cognizant of the obvious parallels between the current increasingly distressed state of our agricultural economy and the agricultural and economic crisis of the 1930's. These parallels necessarily renew the focus on the "confiscatory price" forbearance policy of Section 28–29–04, N.D.C.C.

We can give appropriate deference to legislation which affects areas within the constitutional rule making power of this Court (Art. VI, § 3, N.D. Const.), where the legislative policy implements important State interests. *See State v. Vetsch*, 368 N.W.2d 547, 552 (N.D.1985).[5] But, the circumstances of this case do not compel the choice of forbearance over finality.

This misguided pro se[6] effort initially sought to invoke the original jurisdiction of this Court by application for an extraordinary writ. No rational explanation of why an appeal was not taken has been given. A timely appeal was possible. *See Folmer, supra*, and *Heidt, supra*. Lang's ill-advised procedural choices carry little cause, if any, favoring discretionary forbearance. Furthermore, at this stage, we are advised that the Bank has since assigned its interest in the Sheriff's Certificate of Sale on May 7, 1985, in apparent reliance on the regularity and finality of its foreclosure procedures. Thus, this seriously belated effort to invoke judicial forbearance under Section 28–29–04, N.D.C.C., is not sufficiently worthy to outweigh the policy favoring finality of judgments in this case.

We do not hold that we will never consider the legislative policy of judicial forbearance embodied in Section 28–29–04, N.D.C.C., for extending the time for serving or filing papers on appeal. We do not rule out the statute's potential application to appellate procedure. We conclude only that the time for filing the notice of appeal should not be extended in this case.

Accordingly, we grant the motion to dismiss Lang's appeal.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ.

---

**5.** In *State v. Vetsch, supra*, 368 N.W.2d at 552, we quoted from *State ex rel. Collins v. Seidel*, 142 Ariz. 587, 691 P.2d 678 (1984), as follows: " 'That we possess the rule-making power does not imply that we will never recognize a statutory rule. We will recognize "statutory arrangements which seem reasonable and workable" and which supplement the rules we have promulgated.' "

**6.** We have previously told Lang that our rules or statutes will not be modified or applied differently merely because a party not learned in the law is acting pro se. *Lang v. Basin Electric Power Cooperative*, 274 N.W.2d 253 (N.D.1979).